And we have Ms. Bolden, I see you reserved three minutes for rebuttal, Ms. Bolden, you can begin whenever you're ready. Thank you, Your Honor. Again- Mr. Melnick, are you able to hear okay? I am here, Your Honor.  Thank you. Good morning, Your Honors. My name is Fenaris Bolden with courts Crestine and Runyon for the appellant, in this case, Evan K. Halperin Revocable Living Trust. This is a breach of contract action against Charles Schwab that arises out of the log-offs or interruptions the trust experienced while trading or trying to execute trades on Schwab's online securities trading platform. The issue we presented here is whether this court should vacate the district court's award in favor of Schwab because the district court erred in confirming the arbitration award because the arbitrators failed to hear evidence material and pertinent to the controversy and thereby deprived the trust of a fundamentally fair hearing. The evidence that was pertinent and material to the controversy were fraud parameter reports related to trading activity within a session. The trust maintains that the panel- Ms. Bolden, the panel didn't refuse to hear evidence. This was a discovery issue, right? This was a discovery matter where your client sought production of certain documents. A lot of different motions for discovery. The panel heard argument. Documents were produced. There were some additional documents regarding post-login activity that your client wanted. The panel said, we want a declaration regarding those documents, which was provided. Your client was unsatisfied with that. The arbitration panel had a hearing and determined that the declaration was compliant with their order. So I'm having a hard time understanding what part of that process is so fundamentally unfair that a district court would vacate an arbitration award. Isn't that built on those routine discovery matters that both courts and arbitrators have to deal with all the time? Well, I think it goes deeper than just a routine discovery matter. Because in this instance, the panel ordered Schwab to produce an affidavit. I mean, the dispute concerning whether or not Schwab had in-session, or I should say post-login in-session activity reports, was an issue that went to the very crux of the trust case, okay? This is information that was only within, was within the exclusive control of Schwab. The panel ordered Schwab, because this controversy went on and went on, to produce a declaration wherein Schwab confirmed that, and I quote this, fraud parameter reports related to activity within a session do not exist. Now, that was a specific order from the court. Now, our position is the affidavit produced by Schwab on its face did not say that, it did not read that way. Is it required, though, that it use that exact language if the affidavit otherwise is asserting essentially that the information you're seeking, the documents you're seeking, does not exist? That's just it, Your Honor. It doesn't. Why did you call Mr. Constantinides, I don't know if I'm pronouncing that right. Constantinides. Thank you. I know you wanted to have an evidentiary hearing about that in the discovery phase. But at the arbitration hearing, there was nothing preventing your client. In fact, in your letter to the arbitration panel, you said, if we don't get to question him in connection with this discovery dispute, we reserve the right to call him at the actual arbitration hearing. And yet, he was not called. He could have been questioned about that declaration and any ambiguity in the declaration, and your client chose not to. So what's unfair about that? Well, it's not even an ambiguity in the- Why wasn't he called? Well, number one, the council appealed to the panel to question Mr. Constantinides. And in the response or in the order wherein he denied the request for production of custodians and individuals to address that, the panel denied his request to question Constantinides. Not at the hearing, there was nothing preventing. In fact, your client noted in the letter, that's what they reserved the right to do. There was never an order from the panel saying you cannot call him at the hearing. Well, correct. The panel did not make that specific order, but that was how it was interpreted. On the other side of that, why would your client assume that the worst case scenario of, again, any ambiguity in an order. I didn't read the order that way, but if they had any question about that, they could have said to the panel, we think this is critical to our case. These documents are critical, and we want to call him at the hearing. And in fact, there's a lot in the briefs about Mr. Eastman and what he said about what happened. And he wasn't called either. Why wasn't Mr. Eastman called? Mr. Eastman spoke in favor, the statements from Mr. Eastman were in favor of the trust. I understand that, but so if you're trying to convince the panel that they made some error in not delving further into whether these documents exist, wouldn't Mr. Eastman have been a good witness to- We didn't have to call Mr. Eastman, we put his statements before the panel. But to put flesh on, I mean, to hindsight, it's always 2020, so it's difficult sometimes to get these questions from us. But you're here seeking to overturn a panel determination, and you're saying that the arbitration panel kind of really precluded you from getting some evidence. And wouldn't Eastman be able to kind of really flesh out exactly what he was seeing and interpret it for you to be able to tell you exactly what, I mean, it would seem to me that Eastman would be the gatekeeper for you. Eastman's transcript is what your expert uses to surmise that there were these kind of reports done. And that evidence- And I would think that Eastman, if something's on the screen and Eastman says, yeah, I see that we shut you out on three occasions, he'd be able to tell you exactly what that meant. Whether there was, did that occur during the period of time that someone was actually logged on? Or were you able to determine whether there was a trade going on? And so it would seem to me that Eastman is the keeper of the keys to the house, I don't understand. Well, we certainly agree with that, that Eastman was the keeper of the house, but we also took the- But, and I understand the transcript's favorable to you, I don't disagree with you on that. What I'm saying is that he had probably a lot, I would think he would have a lot more favorable to say for you in person and would be able to flesh out if Schwab was hiding the ball on you. Which is what, you're in essence saying Schwab's hiding information from you, right? No, no question. All right, and so it seems to me that the one person who's going to know better than anybody else is Mr. Eastman. Not your expert, it's Mr. Eastman. He's the one who looked at the screen, it's like, I mean, he's a witness to the crime, isn't he? He was, and we, well. No, I'm not cutting you off, I'm just saying it just, and again, I've been there, it was a long time ago, but I've been there, hindsight's always 20-20, so it's easy to be critical of. But you're here asking us to do something, and the problem is that Mr. Eastman in the flesh didn't get a chance to tell anybody why Schwab was lying. That's your point, you're saying Schwab was lying. Correct, we're saying that Schwab was withholding the information, but I guess what we also asked that, we had asked that the panel do, we asked that the district court do, look at the declaration. The court ordered, or the panel ordered, the ordered Schwab to produce an affidavit that said X. Schwab produces an affidavit that says Y. Where does it address what the panel asked it to address is our issue. All right, thank you. We reserve your three minutes, and we'll hear from Mr. Melnick. Thank you. Thank you, your honors. Right to the point that your honor has raised, it is a big ask from the appellate here. It's asking you to substitute your judgment for that of the arbitration panel that was there to assess the credibility of witnesses, control pre-hearing disclosures, and the like. You're absolutely correct with respect to Mr. Constantinidis. He was not called. There was absolutely nothing blocking him from being called. But the arbitration panel never said, never made a ruling. They were never asked to about whether they would call Mr. Constantinidis as a witness. That was a decision that the trust made in the arbitration below, and that certainly perhaps would have clarified aspects of the declaration that you think were not appropriate. Same thing with Mr. Eastman, Mr. Eastman could have called, as you noted. Frankly, we think that their explanation of the telephone conversation with Mr. Eastman was misleading and incorrect. He did ultimately conclude that this was a firewall issue, not a VPN issue. But if there was any need for clamping, and if there was any need for further information from Mr. Eastman, he could have been called. Instead, with respect to both of these witnesses, what the trust did is they wanted to rely on their external experts, two of them who put in multiple affidavits and declarations and testified, and then allow the panel to weigh the credibility of those expert witnesses and their affidavits and declarations, versus the statements of SWAT personnel in the guise of Mr. Constantinidis in his declaration, and Mr. Eastman in his telephone conversation, which was recorded and presented to the panel. Both of, there was a full and fair opportunity for the trust to present its case, and if you need to clarify anything with respect to, or more frankly, accuse Mr. Constantinidis of misleading or lying, they could have called him to the stand. As the district court here found, there was no fundamental unfairness here. They cannot show that, they have not been able to show that. That's a factual finding made by the district court here, and it's subject to the clearly erroneous standard, and clearly here, they have not met their burden. Let me just ask you, because, and I understand they had an opportunity to clarify it at the hearing, but it does seem that the declaration, I know it's under seal, so. But in the appendix at 371, it's summarized, and it seems to only refer to the non-existence of certain reports regarding post-login activities. Rather, as Ms. Bolden argues, answering the fundamental question of whether there's any reports of any kind. Do you have a response to that? Isn't there some daylight between what the panel ordered in terms of basically a certification that these documents don't exist? And I'm not suggesting necessarily there's an effort to mislead, but it does seem, it seems to be worded in a way that doesn't cover the order completely. Can you address that? Well, yes I can, your honor, and I was not the trial lawyer on the matter at the time. But I think there's an effort to be precise, and I think when you look at the response declaration lens of what the arguments were, back and forth, and the motion practice, it was trying to answer the question. It did not use, it did not parrot the exact language in the order that that is correct. But it was an effort to describe both Schwab's systems post-login and what it maintains pre-login. But your honor, all of that, the declaration was in the record. There was plenty of argument, the lawyer argument, motion practice, and as your honors have noted, an opportunity to call Mr. Constantinese if there was a perception that there was something missing there. The panel accepted it, they heard argument, and they made a decision to accept it. And that is something that is firmly within the province of the arbitration panel here. And neither the district court nor appeal this court should be looking to reassess the evidentiary record, re-weigh the credibility of witnesses, and in essence re-litigate the compliance with the order of that declaration. Can I ask you about their motion for judicial notice of certain documents? And I know you have procedural objections to that in terms of that it wasn't presented to the panel or to the district court. And there's a back and forth about whether extraordinary circumstances standard applies when something can be taken judicial notice of. But I just want to ask you a more basic question, putting all those aside. Do those documents undermine essentially the position that there are no such records in this category? Why don't they lend further support to their position, is my question. I don't think they do. Again, obviously there are procedural objections. I don't think they do. When we're hearing about this for the first time on this particular appeal. And so, none of those documents. There's a picture of what purports to be a security token. One patent from Baratunde in 2006, a press release, and then two other patents. None of these suggest, indicate, or describe that in 2018, there was a fraud parameter reporting system that was in use in 2018, applicable to Mr. Halperin's trust accounts. And then 2020, 2021, when this litigation occurred, there was the ability to retain or pull back those documents. There's nothing in those documents that says that, and in fact, the appellant here admits that. In their motion, they say those documents clearly demonstrate the existence of such a system. Then they backtrack their reply brief on page four, where they say, no, no, it doesn't say that. There's a reasonable inference to be made. And I respectfully suggest, your honors, that there's no reasonable inference to be made. It would require assumption, speculation, gap filling, and extensive guesswork by your honors to lead to the conclusion that the existence of those patents, which describe no commercial technology or implementation, somehow lead to the conclusion, reasonable inference or not, that there was such a reporting system in place in 2018, and that that fraud maintained records of it. All right, thank you, Mr. Mallory. Thank you, your honors. Okay, Ms. Spaulding, you have three minutes for rebuttal. Thank you. Excuse me. Thank you, your honor. First off, I'd like to point out that the trust is, excuse me, is not contending that Mr. Constantinides is making a misrepresentation. We're not stating that at all. What we're saying is, they didn't answer the question with his affidavit. That's number one, because again, that affidavit says nothing about post-login activities. And that is precisely what the panel asked Schwab to comment on. If you look at the affidavit, which is in the appendix 1116, it talks only about log on. Council mentioned that it referenced post-logon in session activities. It does not. That was the concern that we have. Council misstatement, and I refer you to the brief, he misstates the trust's position concerning whether or not Schwab used the patents that were referenced, excuse me, in the motion for judicial notice. What we point out simply is that these patents were in effect. Again, Schwab is the one in total and complete control of the information that we sought. Now, also, it's important to note, you know, the Constantinides affidavit was drafted to be precise. Well, again, the precise question was, affirm or declare that there were no, that fraud parameter reports related to activity within a session do not exist. Schwab did not do that. That is really our position. They didn't do it, it was the specific question asked, and they didn't address it. Part of the problem is the standard that you're operating under is fundamental unfairness. And I was looking back through the case law, in the last 25 years, 25 years, how many arbitrations there have been. There's one case in this circuit where we found the process, the failure to allow certain evidence or excluding certain evidence to be fundamentally unfair, you cite the case Tempo and Shane. But in that case, there was the exclusion of the sole negotiator of the contract when both contracts were both subject to alleged fraudulent inducement. So that's obviously a different situation than we have here. So that's the fundamental problem here, is that the standard that you have to meet is so high and you're essentially arguing that there were documents that would have been important to your hearing that you didn't get. But it's more than just documents that were important to our hearing that we didn't get. They were documents that were within the sole possession and exclusive control of the adversary. Who, when pressed by the court to produce what, if you're saying you don't have it, then make that declaration under oath. And they did not. And I mean, if you look at the district court's opinion, his opinion was based solely on the fact that Schwab allegedly stated under oath that it did not have those documents, and it did not. This went to the crux of our case, Your Honor. That's what makes this so grave. All right. Thank you, Ms. Bolden. Thank you. Thank you, Mr. Melnick. And we'll reserve the decision. Have a good day. Thank you.